IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DANIEL M. BARLEY, #260262, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:10-CV-798-WC |
| | ) | [WO] |
| | ) | |
| BOB RILEY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION and ORDER

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Daniel M. Barley ["Barley"], a state inmate, alleges that rights, privileges or immunities afforded him under the Constitution or laws of the United States have been abridged by the defendants.[1]  Barley names former Governor Bob Riley, former Attorney General Troy King, former Director of Public Safety J. Christopher Murphy, former Commissioner of the Alabama Department of Corrections Richard Allen, Director of Central Records Kathy Holt and Director of Classification Carolyn Golson as

---

[1]  Although the Clerk of this court stamped the complaint "received" on September 22, 2010, it is clear that Barley presented the complaint to prison officials for mailing prior to this date.  A review of the pleadings indicates that Barley executed the complaint on September 20, 2010. *Compl. - Doc. No. 1* at 4. The law is well settled that a *pro se* inmate's complaint is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant complaint] was delivered to prison authorities the day [Barley] signed it . . . ." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).  Thus, the court considers September 20, 2010 as the date of filing.

defendants in this cause of action.   Barley seeks a trial by jury, monetary damages, declaratory relief, preliminary/permanent injunctive relief and costs.[2]

The defendants filed an answer, special reports and relevant supporting evidentiary materials addressing Barley's claims for relief.   The court informed Barley that the defendants' special reports may, at any time, be treated as a motion for summary judgment, and the court explained to Barley the proper manner in which to respond to a motion for summary judgment.  *Order of November 9, 2010 - Doc. No. 26*.  Barley filed a response and supplements thereto in opposition to the special reports filed by the defendants.  *Doc. No. 35*; *Doc. No. 42*; *Doc. No. 51*; *Doc. No. 53* and *Doc. No. 56*.  Pursuant to the aforementioned order, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and Barley's responses in opposition, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as

---

[2]   The court previously denied Barley's request for issuance of a preliminary injunction.  *Order of December 6, 2010 - Doc. No. 34*.

2

a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324;

---

[3] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, those cases citing the prior versions of the rule remain equally applicable to the current rule.

Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison [and other relevant state] authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Barley is required to produce "sufficient evidence" supporting his claims of constitutional violations which would be admissible at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier

of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of

summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court, which is admissible on its face or which can be reduced to admissible form, indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*,

6

276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant is not excused from the burden of establishing by "non-conclusory and meaningful evidence" that a genuine dispute of material fact exists. *Johnson v. Hulett*, 491 F. App'x 60, 61 (11th Cir. 2012); *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Barley fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment. *Matsushita*, *supra*.

### III. BACKGROUND

Barley filed this action while incarcerated at the Elmore Correctional Facility in Elmore, Alabama. The documents before the court demonstrate that Barley was convicted pursuant to his guilty plea by the Circuit Court of Tuscaloosa County, Alabama for second degree sodomy and first degree sexual abuse. The trial court sentenced Barley to twelve years imprisonment and he entered the state prison system pursuant to this sentence on August 1, 2008.

In the present action, Barley alleges that the Alabama Community Notification Act

["the Act" or "ACNA"], *Ala. Code* 1975 § 15-20-1 *et seq*. (1975, as amended) (repealed),

is unconstitutional.[4]   In support of the complaint, Barley makes a variety of allegations

claiming abuse, harassment, discrimination and general hardship based on both actions taken

against him during his time in the free-world prior to his incarceration in 2008 and potential

application of the ACNA to him upon his scheduled release from prison which is currently

set for November 4, 2013.[5]   Barley also asserts the following federal claims for relief:  (1)

The defendants' enactment, application and enforcement of the ACNA violates his

substantive rights, privileges and immunities protected by the Constitution; (2) The

defendants' enactment, application and enforcement of the ACNA violates the Civil Rights

of Institutionalized Persons Act, 42 U.S.C. § 1997, *et seq*.; (3) The defendants' enactment,

application and enforcement of the ACNA violates the Religious Land Use and

Institutionalized Persons Act, 42 U.S.C. § 2000cc(1)(a), *et seq*.; (4) The defendants'

enactment, application and enforcement of the ACNA violates the Americans with

Disabilities Act, 42 U.S.C. § 12101, *et seq*.; (5) The defendants' enactment, application and

enforcement of the ACNA violates the Alabama Religious Freedom Amendment, under Art.

I, § 3.01 of the Alabama Constitution.  *Doc. No. 1* at 5-13.  In an amendment to the

complaint, Barley complains that the State of Alabama does not provide a tiered

---

[4]  The ACNA became effective in 1996 and underwent various amendments until its repeal on July 1, 2011.

[5]  This is the release date listed for Barley on the website maintained by the ADOC, *http://www.doc.state.al.us*.

classification system for sex offenders on its public registry or community notifications which would allow sex offenders to be grouped according to an individual assessment of potential dangerousness and risk of re-offending.  *Doc. No. 15* at 1-2.

## IV.  DISCUSSION

### A.  Suit Against the Defendants in Their Official Capacities - Absolute Immunity

To the extent Barley seeks to sue the defendants in their official capacities for alleged violations of his constitutional rights, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity [with respect to those claims alleging a violation of the Constitution].  Therefore, Alabama state officials are immune from claims [alleging constitutional violations] brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to

sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities for alleged violations of the Constitution.  *Lancaster*, 116 F.3d at 1429; *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1524 (11th Cir. 1995) (damages are unavailable from state official sued in his official capacity).

## B.  The ADA Claim[6]

Barley asserts that the defendants violated his rights under the ADA.  *Compl. - Doc. No. 1* at 5.  "Under Title II of the ADA, a 'qualified individual with a disability' cannot be excluded from participating in, or be denied the benefits of, services, programs, or activities of a public entity 'by reason of such disability' or 'be subjected to discrimination by' the public entity.  *See* 42 U.S.C. § 12132."  *Flournoy v. Culver*, ---- F. App'x ----, 2013 WL 4256026, at *1 (11th Cir. 2013).  Title II of the ADA applies to inmates confined in state correctional facilities.  *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1081 (11th Cir. 2007) (It is well settled law "that a disabled prisoner can state a Title II ADA claim if he is denied participation in an activity provided in state prison by reason of his disability.").

---

[6] For purposes of this Recommendation, the court assumes that Barley is disabled as defined by the ADA.

1.  <u>Claim for Damages from Defendants in Their Individual Capacities</u>.  To the extent Barley seeks monetary damages from the defendants in their individual capacities for an alleged violation of the ADA, he is entitled to no relief as Title II of the ADA does not provide for individual capacity liability.  *Badillo v. Thorpe*, 158 F. App'x 208, 211-12 (11th Cir. 2005) (relying on *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Dale v. Moore*, 121 F.3d 624, 627 (11th Cir. 1997) ("[T]he ADA does not provide for individual liability . . ."); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (same).  The defendants are therefore entitled to summary judgment on Barley's ADA claim for monetary damages lodged against them in their individual capacities.

2.  <u>Request for Damages Against Defendants in Their Official Capacities</u>.  "[I]nsofar as Title II of the ADA creates a private cause of action for damages against the States for conduct that ***actually*** violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  *Georgia*, 546 U.S. at 159 (emphasis in original).  Consequently, with respect to the claims seeking relief from the defendants in their official capacities and as such claims are "in all respects . . . a suit against the entity[,]"  *Graham*, 473 U. S. at 166, the court must determine whether Barley has a claim viable under the ADA.

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.).  A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable

11

> modifications to rules, policies, or practices, the removal of
> architectural, communication, or transportation barriers, or the
> provision of auxiliary aids and services, meets the essential
> eligibility requirements for the receipt of services or the
> participation in programs or activities provided by a public
> entity."  § 12131(2).

*Georgia*, 546 U.S. at 153-154.

> "In order to establish a prima facie case of discrimination under the
> ADA, [a plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified
> individual, and (3) was subjected to unlawful discrimination because of [his]
> disability." *Cash v. Smith,* 231 F.3d 1301, 1305 (11th Cir. 2000) (citation
> omitted). This standard derives from the ADA's language, stating that "no
> [employer] shall discriminate against a qualified individual with a disability
> because of the disability of such an individual." 42 USC 12112(a) . . . .

*Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007).

Barley maintains he is a disabled veteran and therefore application of the ACNA to

him violates Title II of the ADA.  The defendants maintain that Barley fails to present a

claim cognizable under the ADA as he does not allege the defendants denied him access to

programs or services due to his disability.  This court must agree with the defendants as the

only evidence before the court, including the plaintiff's own pleadings, demonstrates that the

actions challenged in the instant complaint occurred solely due to the sexual offense

convictions imposed upon Barley.  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1332, 1334

(11th Cir. 1999) (to proceed on an ADA claim, plaintiff must present evidence the disability

constituted a determinative factor in the decision-making process); *see also McNely v. Ocala-*

*Star Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) (the ADA liability standard requires

proof that the decision at issue occurred because of the alleged disability).

In light of the foregoing, Barley's ADA claim provides no basis for relief against the defendants in their official capacities. Thus, the defendants are entitled to summary judgment on this claim. Because Barley cannot show an ADA or constitutional violation related to his disability, the court need not undertake analysis of whether Title II is a valid abrogation of sovereign immunity from money damages in the circumstances presented by this case. *See Georgia*, 546 U.S. at 159 (remanding for determination of what conduct violated Title II, whether that conduct also violated the Fourteenth Amendment, and "insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid").

### C.  Claims Barred by the Statute of Limitations

Barley presents claims arising from alleged unconstitutional actions taken against him due to his sex offense convictions and provisions of the ACNA, which occurred prior to his incarceration in August of 2008.[7]  The defendants argue that these claims are barred by the statute of limitations governing a 42 U.S.C. § 1983 action filed in this court. *Defendants' Special Report - Doc. No. 20* at 22-23; *Defendants' Supplemental Special Report - Doc. No.*

---

[7]  Barley concedes that he "did not have to register as a sex offender" prior to his 2008 incarceration as "he was awaiting a Probation Hearing" before the Circuit Court of Tuscaloosa County, Alabama. *Doc. No. 1-2 (Affidavit of Daniel M. Barley)* at 2.  Absent registration by Barley, application of the ACNA would not be triggered.  In addition, the actions about which Barley complains related to conduct of his girlfriend, neighbors and local law enforcement officials, none of which can be attributed to the defendants.

*22* at 24.

> ***All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought***. *Wilson v. Garcia*, 471 U.S. 261, 275-76, 105 S.Ct. 1938, 1946-47, 85 L.Ed.2d 254 (1985).  [The plaintiff's] claim was brought in Alabama where the governing limitations period is two years.  Ala. Code § 6-2-38; *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc).  Therefore, in order to have his claim heard, [the plaintiff is] required to bring it within two years from the date the limitations period began to run.

*McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (emphasis added).

Barley presents claims with respect to alleged violations of his constitutional rights which occurred prior to his incarceration in August of 2008.  By its express terms, the tolling provision of *Ala. Code* § 6-2-8(a) provides no basis for relief to Barley from application of the two-year period of limitation.[8]  Thus, the statute of limitations began to run on these claims on or before August 2, 2008.[9]  The limitation period on the pre-incarceration claims ran uninterrupted until it expired, at the latest, on August 2, 2010.  Barley filed the instant complaint on September 20, 2010.  This filing therefore occurred ***after*** expiration of the

---

[8]  This section allows tolling of the limitation period for an individual who "is, at the time the right accrues . . . insane . . . ."  *Ala. Code* § 6-2-8(a).  The complaint demonstrates that Barley was not legally insane at the time his right accrued so as to warrant tolling under *Ala. Code* § 6-2-8(a).

[9]  It appears that Barley was initially incarcerated in the Tuscaloosa County Jail prior to his transfer to the custody of the Alabama Department of Corrections on August 1, 2008.  Nevertheless, for purposes of this Recommendation, the court will utilize August 1, 2008 when calculating the running of the limitation period as Barley acknowledges entering the state prison system on this date.  Thus, August 1, 2008 is the latest potential date on which any of the pre-incarceration claims could have occurred and the limitation period with respect to such claims would have begun to run no later than August 2, 2008.  Fed. R. Civ. P. 6(a)(1)(A) (In computing the period of limitation, "exclude the day of the event that triggers the period[.]").  As is clear from the foregoing, any claims which accrued prior to August 1, 2008 are likewise barred by the two-year period of limitation.

period of limitation applicable to those claims which transpired during Barley's time in the free-world.  In light of the foregoing, the court concludes that Barley's challenges to actions which took place prior to his return to prison in August of 2008 are barred by the applicable two-year period of limitation.[10]

### D.  The ACNA Claims

The Alabama Community Notification Act was repealed on July 1, 2011 by the Alabama Sex Offender Registration and Community Notification Act, Alabama Act No. 2011–640, § 49, Ala. Code § 15–20A–1, *et seq.*, ["ASORCNA"].  As of its enactment, the ASORCNA governs the registration and community notification requirements applicable to adult sex offenders, *see* Ala. Code § 15-20A-4(1), and is "applicable to every adult sex offender convicted of a sex offense as defined in Section 15-20A-5, without regard to when his or her crime or crimes were committed or his or her duty to register arose."  Ala. Code § 15-20A-3.  Upon release from prison, Barley is therefore subject to the provisions of the ASORCNA due to his prior convictions for second degree sodomy and first degree sexual abuse.

Because the ACNA was repealed by the ASORCNA, the court must decide whether repeal of the ACNA renders Barley's challenges to future application of the statute moot.  If repeal of the ACNA has rendered the timely challenges to the statute moot, then these

---

[10]   The court addresses the remaining claims for relief/causes of action to the extent they reference actions which occurred on or after September 20, 2008.

claims must be dismissed for lack of jurisdiction.  As previously stated, Barley was convicted in 2008 of second degree sodomy and first degree sexual abuse.  It is clear to this court that any past or current challenges for declaratory and/or injunctive relief Barley seeks to make regarding the validity of the ACNA, its potential future application to/enforcement against him are now moot due to repeal of the statute.

Article III of the United States Constitution confers jurisdiction on the district courts to hear and determine "cases" or "controversies."  U.S. Const. Art. III, 2.  Federal courts are not permitted to rule upon questions which are hypothetical in nature or which do not affect the rights of the parties in the case before the court.  *Lewis v. Cont'l Bank Corp.*, 494 US. 472, 477 (1990).  This is because courts do not sit to render advisory opinions.  *North Carolina v. Rice*, 404 U. S. 244, 246 (1971).  An actual controversy must exist at all times when the case is pending.  *Steffel v. Thompson*, 415 U. S. 452, 459 n.10 (1974).

A claim becomes moot when the controversy between the parties is no longer alive because one party has no further concern in the outcome.  *Weinstein v. Bradford*, 423 U.S. 147 (1975);  *Flast v. Cohen,* 392 U.S. 83, 95 (1968) ("Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented.").  "Article III requires that a plaintiff's claim be live not just when he first brings suit, but throughout the litigation." *Tucker v. Phyfer,* 819 F.2d 1030, 1034 (11th Cir. 1987).  Because mootness is jurisdictional, dismissal is required when an action is moot, as a decision in a moot action would be an impermissible advisory opinion.

*Al Najjar v. Ashcroft,* 273 F.3d 1330, 1336 (11th Cir. 2001).

      In *Saladin v. Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987), the Eleventh Circuit

Court of Appeals determined:

> A case is moot when the issues presented are no longer "live" or the parties
> lack a legally cognizable interest in the outcome of the litigation, such as
> where there is no reasonable expectation that the violation will occur again or
> where interim relief or events have eradicated the effects of the alleged
> violation.

(citations omitted).

      "Generally, a challenge to the constitutionality of a statute is mooted by repeal of the

statute." *Coral Springs St. Sys., Inc. v. City of Sunrise,* 371 F.3d 1320, 1329 (11th Cir.

2004); *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1332 (11th Cir. 2005) ("[T]he

repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the

legitimacy of the repealed legislation."); *Kremens v. Bartley,* 431 U.S. 119, 128-29 (1977)

(holding moot a constitutional challenge to a state statute governing the involuntary

commitment of mentally ill minors, because the law had been replaced with a different

statute.  Under the circumstances of this case, repeal of the ACNA has rendered Barley's

requests for injunctive and declaratory relief with respect to further application of the Act

moot thereby depriving the court of jurisdiction over these claims for relief.

      The repeal of a challenged law does not necessarily moot a claim for damages by a

plaintiff alleging a past violation of his rights.  *Outdoor Media Group, Inc., v. City of*

*Beaumont,* 506 F.3d 895,  902 (9th Cir. 2007).  In this regard, however, the court must first

consider whether Barley suffered any injury with respect to those claims presented within the period of limitations concerning purported application of the ACNA to him. *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996). The mere speculative threat of injury is insufficient for Article III purposes. *Hill v. McDonough*, 547 U.S. 573, 585, 126 S.Ct. 2096, 2104 (2006) ("[F]ederal courts can and should protect States from . . . speculative suits."); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (plaintiff who challenges state statute must demonstrate realistic danger of sustaining direct injury due to enforcement of the statute against him); *Conner v. Sticher*, 801 F.2d 1266, 1268 (11th Cir. 1986) (plaintiffs' subjective belief harm may occur fails to implicate a constitutionally protected interest); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (jurisdiction cannot be premised upon mere speculation).

The record before the court establishes that the provisions of the ACNA were not applied to Barley after he began his term of incarceration in 2008 – claims arising during this time period are the only claims not barred by the applicable period of limitation. Thus, it is clear that Barley bases the timely claims for damages on a past potential threat of application of various provisions of the now-repealed statute. Barley may not, however, proceed on prospective damage claims under § 1983. *Tanner Adver. Group v. Fayette Cnty.*, 451 F.3d 777, 786 (11th Cir. 2006). As the Eleventh Circuit explained, damages are reserved for constitutional deprivations that have occurred, not those that are merely speculative. *Id*. Since there is no present case or controversy to support the court's jurisdiction over Barley's

challenges to the prior possible application of various provisions of the ACNA to him, these claims are due to be dismissed for lack of jurisdiction.

### E.  The Remaining Federal Causes of Action

1.  <u>General Claims of Constitutional/Federal Violations</u>.  Barley maintains that by enacting, applying and enforcing the ACNA the defendants willfully subjected him and/or conspired to subject him to alleged violations of his substantive rights, privileges and immunities protected by the Constitution, including various rights under the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments, as well rights protected under Art. 1, § 9, the Constitutional Rights of Incarcerated Persons Act, 42 U.S.C. § 1997, *et seq*., the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc(1)(a), *et seq*., the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., and the Alabama Religious Freedom Amendment, Art. I, § 3.01 of the Alabama Constitution.  To the extent these allegations are not subject to dismissal for the reasons previously set forth in this opinion, *infra* at 9-18, and to the extent Barley may bring a cause of action under the above delineated constitutional amendments and/or Acts, his contentions are merely broad assertions of constitutional violations without any facts to support his claims that the defendants violated or conspired to violate his rights under the Constitution and stated statutory provisions through enactment, application and/or enforcement of the ACNA.[11]  *See*

---

[11]  With respect to Barley's challenge to the defendants "enactment" of the ACNA, none of the named defendants are or were responsible for enacting state laws.  Even if Barley had named a proper defendant, the Supreme Court has "recognized that state legislators enjoy common-law immunity from

*Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a conspiracy allegation that is vague and conclusory fails to state a claim upon which relief can be granted and is subject to dismissal). That is, the complaint fails to identify any specific facts which allow this court to make a plausible inference that the challenged conduct or actions Barley attributes to the named defendants amounted to a violation of his constitutional rights or federal law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Marsh v. Butler Cnty.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) ("[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp.,*

---

liability for their legislative acts" and that this immunity can shield officials against suits brought under 42 U.S.C. § 1983 seeking damages, declaratory relief, or injunctive relief. *Supreme Court of Va. v. Consumers Union of the U.S., Inc.,* 446 U.S. 719, 732 (1980) (citing *Tenney v. Brandhove,* 341 U.S. 367 (1951)); *see also Yeldell v. Cooper Green Hosp., Inc.,* 956 F.2d 1056, 1062 (11th Cir. 1992) (legislative immunity applies to "those acts which are 'necessary to preserve the integrity of the legislative process.'") (quoting *United States v. Brewster,* 408 U.S. 501, 517 (1972)). In *Scott v. Taylor,* 405 F.3d 1251, 1257 (11th Cir. 2005), the Eleventh Circuit concluded that state legislators who act in their legislative capacities are entitled to absolute legislative immunity whether a suit seeks damages or prospective relief and regardless of whether the state legislators are named in their individual or official capacities.

*v. Twombly,* 550 U.S. 555, 556 (2007) (internal citation omitted).  Barley cannot rely on subjective suspicions and unsupported speculation but must provide sufficient facts to show how the conduct or actions of a defendant amounted to a violation of his constitutional rights. *Id.*  Further, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government official defendant, ***through the official's own individual actions,*** has violated the Constitution."  556 U.S. at 676, 129 S.Ct. at 1948 (emphasis added). The plaintiff must plead that a defendant acted with "purpose rather than knowledge" to satisfy this standard.  556 U.S. at 677, 129 S.Ct. at 1949.

In this case, Barley fails to specify any injury or harm actually caused by the alleged unconstitutional conduct of the defendants occurring since September 20, 2008 and only conclusorily asserts that he may suffer alleged violations of various constitutional rights upon his future release if the ACNA were applied to him.  *Doc. No. 1-2 (Affidavit of Daniel M. Barley)* at 1-4; *Doc. No. 35-1 (Affidavit of Daniel M. Barley)*.  These shortcomings, coupled with Barley's broad and unsubstantiated allegations of constitutional violations lodged against the named defendants, in the absence of any factual development to support his claims against the defendants, is insufficient to defeat their motion for summary judgment.[12] The court, therefore, concludes that the defendants' dispositive motion is due to be granted

---

[12]  Many of the allegations made by Barley regarding potential adverse treatment when released to the free-world  will not necessarily be attributable to application of any community notification law nor any actions of state officials.  Rather, the assertions made by Barley demonstrate that the stigmas which may be imputed to him upon his release will principally result from his convictions for second degree sodomy and first degree sexual abuse.

with respect to the allegations set forth above to the extent these allegations are not otherwise

subject to dismissal as untimely filed or for lack of jurisdiction.[13]  *Celotex*, 477 U.S. at 324;

*Harris*, 65 F.3d at 916.

     2.  <u>The Sex Offender Registry Classification Claim</u>.  In his amendment, Barley

contends that the defendants should institute a tiered classification system based on the

convicted sex offender's individual dangerousness.  *Doc. No. 15* at 1-2.  Barley argues that

the failure of the State of Alabama to have such a classification system on its website registry

of sex offenders and set forth in the community notifications violates his constitutional rights.

*Id*.  Barley appears to base this claim on the belief that without disseminating information as

to a registrant's potential dangerousness those presumably not dangerous registrants must

endure the stigma of the general public erroneously thinking otherwise.

     In *Connecticut Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d

98 (2003), the Court addressed a Fourteenth Amendment Due Process challenge to

Connecticut's sex offender registration and notification law on grounds that it did not provide

---

[13]  Barley likewise asserts that the defendants conspired to violate his rights under 42 U.S.C. § 1985, as well as under 42 U.S.C. § 1983.  Under § 1985, Barley must establish (a) the existence of a conspiracy; (b) that the defendants intended to deny Barley of his equal protection of laws, or equal privileges and immunities under the laws; (c) injury or deprivation of a federally-protected right; (d) an overt act in furtherance of the object of the conspiracy; and (e) some racial or otherwise class-based invidiously discriminatory animus behind the conspirator's action.  *Arnold v. Bd. of Educ. of Escambia Cnty., Alabama,* 880 F.2d 305, 317-18 (11th Cir. 1989), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163 (1993).  As this court has already determined, Barley's allegations of a conspiracy between the defendants are conclusory, vague and general which is insufficient.  *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir. 1990); *Fullman,* 739 F.2d at 556-57.  Additionally, Barley has not alleged that the defendants' conduct was motivated by race or any other class-based invidiously discriminatory animus.  Consequently, Barley fails to state a claim for relief under § 1985.

registrants a pre-deprivation hearing to determine whether they were currently dangerous. Reasoning that "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme," and that Connecticut's registration requirement was "based on the fact of previous conviction, not the fact of current dangerousness," the Supreme Court found that "due process does not entitle [a defendant] to a hearing . . . ." 538 U.S. at 4, 7.

Here, Barley's contention that he has a constitutional right not to be stigmatized due to omission of a registrant's potential dangerousness on Alabama's sex offender registry, community notification flyers and website listings entitles him to no relief.  Although Barley does not assert violation of a specific federal constitutional right with respect to this claim, the court understands this allegation as one implicating the Fourteenth Amendment Due Process Clause.  The law is well-settled, however, that damage to reputation alone does not implicate a protected liberty or property interest.  *See Paul v. Davis,* 424 U.S. 693, 701 (1976).  In order for a defamation claim to be viable under § 1983, a plaintiff must show that the "governmental action taken . . . deprived [him] of a right previously held under state law."  *Id.* at 708.  That is, in addition to showing reputational harm, the plaintiff must also show an alteration or extinguishment of an interest protected by the Constitution or state law. *Id.* at 708-09.  This is known as the "stigma-plus" test.  *Id.* at 711.

The *Doe* Court applied the "stigma-plus" test in addressing the constitutionality of Connecticut's sex offender registry law.  As noted, the Court determined that because the

basis of Connecticut's registration requirement is the fact of conviction alone, dangerousness and the opportunity to be heard on the issue of dangerousness are simply not material issues. 538 U.S. at 7-8.  Alabama's sex offender website registry and its community notifications are based upon the fact of an offender's conviction for a sexual offense.  There is no indicator regarding the dangerousness of the persons listed on the registry or named in the flyers. *See* Alabama Department of Public Safety Community Information Center, *available at* http://www.dps.alabama.gov.  *See* Ala. Code § 15-20A-8.[14]  Further, there is no indicator on the website or the community notifications that the State has made an individual determination regarding a registrant's dangerousness.  The registry actually cautions persons that "the information contained on th[e] site may not reflect the current residence, status, or other information regarding the offender."  *Id*.  Thus, similar to the statute at issue in *Connecticut Dep't of Pub. Safety v. Doe*, the State of Alabama "decided that the registry of information of ***all*** sex offenders - currently dangerous or not - must be publicly disclosed" and "states are not barred by principles of '***procedural*** due process' from drawing such classifications."  538 U.S. at 11 (emphasis in original).  Based on the foregoing, the defendants are entitled to summary judgment on Barley's sex offender registry classification claim.

      3.  <u>The Exercise of Supplemental Jurisdiction</u>.  To the extent Barley seeks to invoke

---

[14]  Ala. Code § 15-20A-8 concerns registration information for the public registry website and delineates the information which is to be provided thereon.

the supplemental jurisdiction of this court with respect to claims arising under state law, he

is entitled to no relief.  Review of pendent state law claims is only appropriate upon exercise

of this court's supplemental jurisdiction over a related constitutional claim.  In the posture

of this case, however, the court concludes that the exercise of supplemental jurisdiction is

inappropriate.

> Two factors determine whether state law claims lacking an independent federal
> jurisdictional basis can be heard in federal court with a federal claim over
> which the court has jurisdiction.  To exercise pendent jurisdiction [or what is
> now identified as supplemental jurisdiction] over state law claims not
> otherwise cognizable in federal court, "the court must have jurisdiction over
> a substantial federal claim and the federal and state claims must derive from
> a 'common nucleus of operative fact.'" *Jackson v. Stinchcomb,* 635 F.2d 462,
> 470 (5th Cir. 1981) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86
> S.Ct. 1130, 16 L.Ed.2d 218 (1966)).  *See generally* C. Wright, A. Barley & E.
> Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567 pp. 443-47
> (1975).

*L.A. Draper & Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The

exercise of supplemental jurisdiction is completely discretionary.  *United Mine Workers v.*

*Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly

encourages or even requires dismissal of the state claims."  *L.A. Draper & Son*, 735 F.2d at

428.  In view of this court's resolution of the federal claims presented by Barley, any pendent

state claim is due to be dismissed.  *Gibbs*, 383 U.S. at 726 (if the federal claim from which

the state claim arises is dismissed prior to trial, the state claim should be dismissed as well);

*see also Ray v. Tennessee Valley Auth.*, 677 F.2d 818 (11th Cir. 1982).

## V.  CONCLUSION

For the foregoing reasons, it is

ORDERED and ADJUDGED that:

1.  The plaintiff's requests for declaratory and permanent injunctive relief (Doc. No. 1 at 13) be DENIED as moot;

2.  The plaintiff's claims challenging actions which occurred prior to his return to prison in August of 2008 be DISMISSED with prejudice as the plaintiff failed to file the complaint within the time prescribed by the applicable period of limitation;

3.  The plaintiff's challenges to the Alabama Community Notification Act with respect to actions which occurred on or after September 20, 2008 be DISMISSED with prejudice for lack of subject matter jurisdiction;

4.  The plaintiff's claim seeking tiered classification of the sex offender registry be DISMISSED with prejudice as this claim provides no basis for relief;

5.  The plaintiff's state law claims be DISMISSED without prejudice as the court declines to exercise supplemental jurisdiction over any such claims;

6.  The defendants' motion for summary judgment with respect to the plaintiff's federal claims for relief be GRANTED;

7.  This case be DISMISSED; and

8.  No costs are taxed herein.

A separate Final Judgment will accompany this memorandum opinion.

26

Done this 11th day of September, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE